## McDaniels v. McDaniels

*Scott A. Scurfield,* for petitioner.
*Carolann A. Young,* for respondent.

CASCIO, *J.,* January 31,1992—This case is before the court on a petition to revoke adoption. The petitioner (hereinafter referred to as "Donald") is the former husband of respondent McDaniels and is the adoptive father of Kara McWilliams, born June 17, 1981, and Kalena McWilliams born August 22, 1982. Respondent McDaniels (hereinafter referred to as "Cindy"), is the natural mother of the children and the former wife of Donald. Respondent McWilliams (hereinafter referred to as "Robert") is the natural father of the children and Cindy's first husband.

From the pleadings and the testimony, we find the following facts.

(1) Cindy and Robert were married when both girls were born. They were subsequently divorced in 1987.

(2) Cindy and Donald lived together from June of 1987 and were married December 31, 1987.

(3) A petition for involuntary termination of parental rights was filed against Robert on August 1, 1989 and he voluntarily terminated his parental rights on August 7, 1989.

(4) Cindy and Donald filed a petition for adoption on September 21, 1989.

(5) A final decree of adoption was entered, after hearing, on January 11, 1990.

(6) On February 3, 1990, Cindy left the marital residence she had shared with Donald, took the children, and established a separate residence.

(7) On March 20, 1990, Cindy commenced a support action against Donald in this court and later withdrew it.

(8) On March 27, 1991, Cindy filed another support complaint in this court which resulted in an order against Donald entered May 13, 1991.

(9) This petition was filed May 29, 1991 and was heard on September 12, 1991.

(10) Donald and Cindy stipulated that they had marital difficulties before the adoption proceedings were filed and they did not reveal this information to this court's investigative officer or to the court at the adoption hearing.

## DISCUSSION

Donald alleges he was fraudulently induced by Cindy to adopt these children when she knew that she intended to leave him. He also alleges that a fraud was perpetrated upon the court by virtue of the failure of the parties to reveal their marital difficulties to the court before the adoption decree was entered.

This court has long recognized the right of a party to bring an action to attempt to revoke an adoption. See *In re Adoption of Lasure,* 14 Somerset Leg. J. 184 (1948), in which then President Judge Boose ruled that the court has the power to revoke an adoption for good cause shown and the petitioner has the burden of introducing competent evidence to substantiate the averments in the petition.

From this record, we find that there is not sufficient evidence to establish that Donald was fraudulently induced by Cindy to agree to adopt these children. Donald cites *Adoption of R.A.B.,* 4 Fiduc. Rep. 2d 216 (Allegheny 1984) in support of his position. While we agree that we have broad equitable powers, granted by the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. §711(7), to consider this petition, we also note, as did Judge Ross, that Donald bears the burden of proving his case by clear and convincing evidence. There is certainly no credible evidence in this record which would lead us to believe that Cindy coerced Donald into proceeding with the adoption so that she could pursue him for support instead of pursuing Robert whose financial situation could best be described as precarious. Without discussing the evidence further, we simply find that Donald has failed to meet his burden in attempting to show fraud in the inducement.

Fraud on the court is, of course, another matter, which also has been recognized by this court in adoption matters for some time. See *In re Adoption of Phillips,* 12 D.&C.2d 387 (1957). In *Phillips,* as in *R.A.B.,* the fraud alleged consisted of a failure to advise the court of marital problems experienced by the adoptive parents. In *Phillips,* then President Judge Lansberry

found that because the pre-existing marital problems had been resolved in advance of the filing of the petitions for adoption, the failure of the parties to report the existence of these problems was neither active fraud (characterized by the actual intent to take advantage of another) nor constructive fraud (characterized by a breach of a legal or equitable duty).

In contrast, *R.A.B.* involved a situation where the parties had failed to disclose to the court significant, existing marital problems. Even though Judge Ross characterized the conduct of the parties as a "fail[ure] in their duty to disclose to the court at the adoption hearing their deep existing marital problems," *Id.* at 219, she, like Judge Lansberry before her, recognized that such conduct could support the invalidation of an adoption decree *only if it would be in the best interests of the children involved.*

The welfare of the children involved is always of paramount consideration, even where the court is being asked to invalidate an adoption decree. *In re Adoption of List,* 418 Pa. 503, 211 A.2d 870 (1965). In *R.A.B.,* the court withheld its adjudication until the natural father, a necessary party, was joined in the action. We have no information as to the eventual outcome of the case. In *Phillips,* Judge Lansberry determined that, after finding no fraud, consideration of the best interests of the children still did not compel him to grant the requested relief. We reach the same conclusion here.

Although both parties admitted the existence of marital problems prior to the commencement of the adoption proceedings, neither deemed them to be of such a serious nature that they should halt the adoption. Certainly

Donald, who now complains about his own failure to inform the court, could have done just that. Nothing in the record indicates that either party could have anticipated the collapse of their relationship despite the fact that it occurred shortly after the adoption decrees had been entered. It is clear from the record that Cindy and Donald and the children lived together for six months before the date of the marriage and more than two additional years before the adoption occurred.

Under the circumstances, we find that Donald has failed to sustain his burden of proof in this matter. Even if we were to conclude that he has shown that constructive fraud was perpetrated upon the court by the failure of the parties to reveal the pre-existing marital problems, he has raised nothing to convince us that revocation of the adoption decrees would be in the best interests of the children.

### ORDER

And now, January 31, 1992, consistent with the foregoing memorandum, the petition to revoke adoption is dismissed. Costs on petitioner.